**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                          CRIMINAL ACTION NO. 5:07-cr-00105

DEAN R. GATHERUM,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

By Order of Reference entered on July 10, 2007, pretrial motions in this matter were referred to United States Magistrate Judge R. Clarke VanDervort for disposition or submission of proposed findings and a recommendation ["PF&R"].  On September 6, 2007, Defendant filed a Motion to Suppress Evidence [Docket 51].  Magistrate Judge VanDervort held hearings on the motion on October 24, 2007, and December 17, 2007, and thereafter filed a PF&R on December 27, 2007 [Docket 83].  In that filing, the magistrate judge recommended that this Court grant in part and deny in part Defendant's motion to suppress.

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  *See also Page v. Lee*, 337

F.3d 411 (4th Cir. 2003); *Johnson v Zema Sys. Corp.*, 170 F.3d 734 (7th Cir. 1999) (if party fails to object to magistrate judge's report and recommendation in district court, she waives appellate review of both factual and legal questions; if party objects in district court on some issues and not others, she waives appellate review of issues to which she has not objected). Both Defendant and the Government filed objections to the PF&R.

## I.  BACKGROUND

The full factual and procedural history of this action is set forth in the PF&R.  In short, Defendant has moved to suppress three categories of evidence in this case: (1) evidence obtained during the execution of a Search Warrant by the West Virginia State Police (WVSP) on January 10, 2007; (2) a letter and Last Will and Testament seized by the Mabscott Police Department on January 11, 2007; and (3) Defendant's statement to the WVSP during an interview on January 15, 2007.

### A.  Search Warrant

The instant criminal action arose from the WVSP's visit to Defendant's home in Beckley, West Virginia, on January 10, 2007.  On that day Troopers D. C. Eldridge and M. K. Summers went to Defendant's home in order to confirm his residence due to his registered sex offender status. [1] During the visit, the Troopers asked Defendant to consent to a search of his computer.  Defendant agreed to the search and signed a consent form.  The consent form stated that Defendant agreed to a forensic examination of his computer and that any evidence found may be used against him in court.

---

[1] Defendant was previously convicted in this Court of possession of child pornography in Criminal Action No. 1:95-cr-55 on July 17, 1995.

During the search of the computer, Trooper Eldridge found digital photographs of males engaged in sexual conduct among themselves. Each of the pictures had the words "Mike18.com" embossed on its corner. Trooper Eldridge believed that one of the males in the pictures was between twelve and fourteen years old. When questioned about the pictures, Defendant told the Troopers that the website from which the pictures were obtained, Mike18.com, certified that the persons in the pictures were adults, not minors. Defendant offered to access the website for the Troopers, but the Troopers declined because its was "forensically unsound" to let Defendant access his computer. Additionally, Trooper Eldridge did not believe that a website guarantee about the age of the pictured individuals was relevant.

At this stage, Defendant was taken to the WVSP Barracks, mirandized, and then interviewed. During Defendant's detention, Trooper Eldridge prepared an application for a search warrant, which included a list of items he wished to seize from Defendant's residence. The listed items primarily included any pornography or information that might indicate Defendant's contacts with minors. In support of the warrant application, Trooper Eldridge submitted an Affidavit which explained that he had extensive experience and training in investigating the sexual exploitation of minors. The Affidavit also listed the common characteristics of persons who sexually exploit children and who are involved in child pornography, including the methods by which such persons collect such pictures. Finally, the Affidavit stated that:

> 16.    On January 10, 2007 and in the instant case, the affiant accompanied by Corporal M. K. Summers of the West Virginia State Police office in Beckley, West Virginia to the residence of Dean Gatherum located at 104 Bond Street near Beckley, West Virginia for the purpose of verifying the status of Dean Gatherum's West Virginia Sex Offender registration.

17.     On this same date, the affiant and Corporal Summers were invited into Dean Gatherum's by Dean Gatherum, in which the affiant and Corporal Summers observed that Dean Gatherum had computer processing unit in his residence.

18.     On this same date, the affiant and Corporal Summers obtained written consent from Dean Gatherum to allow the affiant to conduct a search of any and all computers at his residence.

19.     On the same date, the affiant conducted a secure preview of Dean Gatherum's home computer. During this preview, the affiant observed that Dean Gatherum's computer had numerous graphic picture files of three males engaged in sexually explicit conduct. The affiant further observed that one of the males depicted in these pictures appeared to be approximately 12 to 14 years of age. The affiant further observed that Corporal Summers examine these picture files, in which he too agreed that one of the male subjects participating in the pictures appeared to be 12 to 14 years old.

20.     The affiant brought these pictures to Dean Gatherum's attention, in which he advised that he had obtained them from a web site on the internet.

[Docket 68, Exhibit 6.]  The warrant application did not include copies of the pictures which the Troopers observed, that the pictures had the words "Mike18.com" on them, or Defendant's statement that he believed the pictures were of adults.

The warrant application was then presented to the Honorable H. L. Kirkpatrick, Circuit Court Judge for Raleigh County, West Virginia. Judge Kirkpatrick approved the application and issued a Search Warrant, which was executed on January 10, 2007. The items seized during the search led to Defendant's Indictment for possession of child pornography, 18 U.S.C. § 2252A(5)(B), in this case.

In his PF&R, Magistrate Judge VanDervort found that Judge Kirkpatrick had probable cause to issue the Search Warrant based on the application's statements that (1) Defendant was a registered sex offender and (2) Trooper Eldridge had training in the criminal exploitation of minors and was qualified to conclude that one of the persons in the pictures was between twelve and fourteen years

-4-

old.  Magistrate Judge VanDervort further found that the omission of Defendant's statement that the pictures were of adults was not necessary or material to the issuance of the warrant.  Finally, Magistrate Judge VanDervort found that the actual photographs need not have been attached to the warrant application for Judge Kirkpatrick's review.  Based on these findings, the magistrate judge recommended denying Defendant's motion to suppress evidence derived from the search of his home on January 10, 2007.

   *B.  Document Seizure*

   Following Defendant's release from the custody of the WVSP on January 10, 2007, he left a voice message with a friend indicating that he was contemplating suicide.  The friend reported the message to the Mabscott Police Department.  Captain J. M. Kerr went to Defendant's home on the morning of January 11, 2007, to investigate, but did not obtain a warrant prior to doing so.  After being invited into Defendant's home, Captain Kerr noticed papers and a Last Will and Testament on a chair in Defendant's living room.  Captain Kerr read both the Will and a letter labeled "Personal and Confidential."  After noticing that the letter referenced the child pornography investigation, Captain Kerr decided to retain the letter and the Will (the Documents).  Although the parties dispute whether Defendant gave Captain Kerr permission to read the Documents, Captain Kerr testified that Defendant wanted him to deliver the letter to Defendant's friend.[2]  Instead, Captain Kerr turned the Documents over to the WVSP.

   Magistrate Judge VanDervort found that Captain Kerr's seizure of the Documents to turn over to the WVSP was beyond the scope of any consent Defendant might have given.  Therefore, the magistrate judge recommended granting Defendant's motion to suppress the Documents.

_____

[2]  Defendant testified that he did not give Captain Kerr permission to take the Documents.

C.  *Statement to West Virginia State Police*

During Captain Kerr's visit to Defendant's residence on January 11, 2007, Defendant asked to be transported to Appalachian Hospital, where he was placed on suicide watch.  Defendant was released on January 15, 2007.  During the period of Defendant's hospital stay, Trooper Eldridge obtained an Arrest Warrant for Defendant.

Immediately following Defendant's release from the hospital's care, Trooper Eldridge met him at the hospital and requested that he come to the WVSP's office for questioning.  Defendant agreed and was not placed in restraints or told that he was under arrest.  Prior to the interview, Defendant was told that he was free to leave and was advised of his *Miranda* rights, which he waived in writing.  Defendant then gave a statement to the WVSP (the Statement).  Following the interview, Defendant was arrested.

Magistrate Judge VanDervort concluded in his PF&R that Defendant was properly advised of his *Miranda* rights and knowingly and voluntarily waived these rights prior to submitting to questioning.  Thus, the magistrate judge recommended denying Defendant's motion to suppress the Statement.

## II.  OBJECTIONS

As noted above, both the Government and Defendant have objected to the PF&R.  The parties do not dispute and have not objected to the PF&R's factual findings.  Rather, the parties object to Magistrate Judge VanDervort's legal conclusions.  Defendant objects to the magistrate judge's recommendation to deny his motion to suppress the Statement and the evidence obtained pursuant to the Search Warrant.  The Government objects to the magistrate judge's recommendation

to suppress the Documents.  Therefore, the Court has conducted a *de novo* review of the PF&R's recommendations.  *See* 28 U.S.C. § 636(b).

    *A.  Search Warrant*

    In his first objection, Defendant argues that the magistrate judge erred in recommending the denial of his motion to suppress evidence collected during the execution of the Search Warrant.

    Defendant first argues that the warrant application contained insufficient evidence to permit Judge Kirkpatrick to make a probable cause finding that Defendant's computer contained images of child pornography.  The Court has reviewed *de novo* the magistrate judge's finding that there was probable cause to support the search warrant. *United States v. Wilhelm,* 80 F.3d 116, 118 (4th Cir. 1996).  When reviewing Judge Kirkpatrick's determination that there was sufficient probable cause to issue the warrant, however, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A [judge's] determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v. Gates,* 462 U.S. 213, 236 (1983); *United States v. Blackwood,* 913 F.2d 139, 142 (4th Cir. 1990).

    Probable cause is a "practical, nontechnical conception."  *Gates,* 462 U.S. at 231.  A reviewing court must apply a totality of the circumstances test to determine whether probable cause supported a search warrant.  *Id.* at 231, 233; *Wilhelm,* 80 F.3d at 119.  As the Supreme Court has held:

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contra-band or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.

*Gates,* 462 U.S. at 238.

As noted by the magistrate judge, the warrant application informed Judge Kirkpatrick that: (1) Defendant was a registered sex offender, and (2) Trooper Eldridge had training in the criminal exploitation of minors and had concluded that Defendant's computer contained a picture of a person engaged in sexually explicit conduct who was between twelve and fourteen years old. Defendant argues that this information is not sufficient to support a finding of probable cause and that Judge Kirkpatrick should have been provided copies of the pictures to view.

Although copies of the pictures which Trooper Eldridge observed were not attached to the warrant application, a judge may properly issue a warrant based on factual descriptions of an image. *See New York v. P.J. Video, Inc.,* 475 U.S. 868, 874 n. 5 (1986) ("[W]e have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure. On the contrary, we think that a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause . . . ."); *see also United States v. Chrobak,* 289 F.3d 1043, 1045 (8th Cir. 2002) (ruling that a magistrate may base probable cause on viewing images or on a description of them). The Court **FINDS** that the warrant application provided Judge Kirkpatrick with an adequate description of the images which Trooper Eldridge believed to be child pornography. Although Defendant argues that the pictures should have been included with the warrant application, the record does not demonstrate that it was possible for Trooper Eldridge to have done so.[3] Because Defendant was a registered sex

---

[3] In footnote 2 of his objections, Defendant argues that the WVSP could have taken photographs of the images found on Defendant's computer. It appears this issue was raised for the first time in the footnote, and was not presented to the magistrate judge. Further, Defendant does not support his argument with evidence that it was possible for the WVSP to have taken "pictures of the pictures."

(continued...)

-8-

offender and Trooper Eldridge was trained in the area of the criminal exploitation of children, the Court also **FINDS** that, under the totality of the circumstances of the warrant application, Judge Kirkpatrick had a substantial basis for his probable cause finding that Defendant had child pornography on his computer.

Defendant next argues that the Search Warrant was invalid because Trooper Eldridge failed to disclose material facts and intentionally misled Judge Kirkpatrick, constituting a *Franks* violation. Specifically, Defendant believes that the warrant application improperly omitted that the words "Mike18.com" appeared on the pictures and that Defendant believed that the pictures were legal.

When raising a *Franks v. Delaware* challenge to a search warrant affidavit, a movant by preponderance of the evidence must show: one, "that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and, two, that the offending information was essential to the probable cause determination. 438 U.S. 154, 155-56, (1978); *see also United States v. Shorter,* 328 F.3d 167, 170 (4th Cir. 2003). The Fourth Circuit has held that the omission of exculpatory information is far less likely to raise a *Franks* inquiry than the inclusion of false or misleading information. *United States v. Colkley,* 899 F.2d 297, 301-02 (4th Cir. 1990). The fact of omission alone does not demonstrate intentional misrepresentation. *Shorter,* 328 F.3d at 171. Even if the omission was an intentional misrepresentation, a movant only prevails if inclusion of "the omitted fact . . . would have negated probable cause." *Id.*

Upon review of the record, the Court **FINDS** that Defendant has failed to establish that Trooper Eldridge intentionally, knowingly, or recklessly failed to disclose material facts to the

---

[3](...continued)
Thus, the Court is not satisfied that it was possible for the WVSP to have provided photographs of Defendant's computer images to Judge Kirkpatrick.

probable cause determination.  Assuming, *arguendo*, that Trooper Eldridge improperly omitted from the warrant application that "Mike18.com" appears on the pictures and that Defendant believed that the pictures were legal, these facts certainly would not negate probable cause.  Rather, the Court **FINDS** that even if Judge Kirkpatrick would have been made aware of these facts, Trooper Eldridge's description of the pictures would have constituted probable cause.

For the foregoing reasons, the Court **FINDS** that the January 10, 2007 Search Warrant was supported by probable cause and **OVERRULES** Defendant's first objection to the PF&R.

*B.  Statement to West Virginia State Police*

Defendant also objects to Magistrate Judge VanDervort's recommendation to deny his motion to suppress the Statement.  As noted above, the magistrate judge recommended denying the motion to suppress the Statement because Defendant knowingly and intelligently waived his *Miranda* rights prior to giving the Statement, and the Statement was voluntarily given.  Defendant argues that his *Miranda* waiver was unfairly obtained because the WVSP did not inform him that he would be arrested following the interview.  Defendant maintains that he would likely have not given the Statement if he had been told that he would be arrested following the interview.  Thus, Defendant believes the Statement was not voluntary.

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Const. amend V.  A statement of an accused, however, is "involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause."  *United States v. Braxton,* 112 F.3d 777, 780 (4th Cir. 1997).  Whether a statement is voluntary is determined according to the "totality of the circumstances," including the "characteristics of the defendant, the setting of the interview, and the details of the

interrogation." *United States v. Pelton,* 835 F.2d 1067, 1071 (4th Cir. 1987).  Under the totality of the circumstances, a statement is involuntary if the accused's will was "overborne" or his "capacity for self-determination critically impaired." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973). As the Supreme Court observed in *Colorado v. Connelly*, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the *Due Process Clause*." 479 U.S. 157, 167 (1986).

It is undisputed that Defendant was fully advised of his *Miranda* rights and signed a form spelling out his understanding of those rights prior to giving the Statement.  Defendant contends that the Statement was not voluntary because he was not informed by the WVSP that he would be arrested at the conclusion of the interview.  The Court **FINDS** that, under the totality of the relevant circumstances, Defendant has failed to demonstrate any coercive government conduct.  That the WVSP interviewed Defendant without informing him that he would be arrested following the interview is not the type of affirmative pressure prohibited by the Due Process Clause.  Defendant cites no legal authority to support his position that a person is coerced when the government fails to disclose information such as a pending arrest warrant, rather than committing an affirmative act of coercion.  Defendant's second objection to the PF&R is, accordingly, **OVERRULED**.

### C.  Document Seizure

Finally, the Government objects to the magistrate judge's finding that Captain Kerr's warrantless seizure of the Documents from Defendant's home on January 11, 2007, was beyond the scope of any consent Defendant might have given.  The Government argues that because Defendant consented to Captain Kerr taking the Documents, Defendant waived his Fourth Amendment rights.

-11-

Defendant responds that he merely consented to Captain Kerr taking the Documents to give to his friend, not to give to the WVSP for its child pornography investigation.

It is well-established that, unless an exception applies, the Fourth Amendment requires law enforcement officials to obtain a warrant before they conduct a search. *See United States v. Boone,* 245 F.3d 352, 361 (4th Cir. 2001). Likewise, it is also well-settled that voluntary consent to a search is one such an exception. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 219 ("One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). When voluntary consent is given, it may be limited or withdrawn; thus, a warrantless search must not exceed the scope of the voluntary consent. *See United States v. McFarley,* 991 F.2d 1188, 1191 (4th Cir. 1993) (noting that a search may not exceed the scope of consent). "When an official search is properly authorized – whether by consent or by the issuance of a valid warrant – the scope of the search is limited by the terms of its authorization." *Walter v. United States,* 447 U.S. 649, 656 (1980). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno,* 500 U.S. 248, 251 (1991).

In this case, it is undisputed that Defendant gave his voluntary consent to Captain Kerr to read the Documents. With regard to the scope of the consent, Captain Kerr testified during the motion hearing as follows:

Q: . . . And did the defendant – it sounds like from your testimony that the defendant actually wanted you to take [the Documents] with you?

A: Yes.

Q: He wanted you to give [the Documents] to his friend, but did he know then that what you were going to do with the letter instead, that you were going to give it to the police, for example?

A: At that point, no, ma'am.

[Document 86, Ex. A at 16.]

Captain Kerr's testimony establishes that the scope of Defendant's consent to the seizure of the Documents was for delivery to his friend. Therefore, Captain Kerr's delivery of the Documents to the WVSP for its child pornography investigation exceeded the scope of Defendant's consent. Accordingly, the Government's objection to the PF&R is **OVERRULED**.

### III.  CONCLUSION

Based on the above, the Court **OVERRULES** Defendant's and the Government's objections to the PF&R, and adopts the recommendations contained in the PF&R to **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Suppress Evidence [Docket 51].  The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the Defendant and counsel, the United States Attorney, and Magistrate Judge VanDervort.

ENTER:      January 23, 2008

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

-13-